*In re* CARY, Bankrupt.

*(District Court, S. D. New York. December 30, 1881.)*

1. DEPOSITIONS—SIGNATURE—STENOGRAPHER'S NOTES.

Upon an order of reference to a register in bankruptcy to take proofs, the depositions of witnesses taken by a stenographer, before a register, and afterwards reduced to *long-hand*, will be suppressed if not read to and signed by the witness, according to general order 10, after they are written out, though the witness' subsequent attendance for that purpose could not be procured.

The reference in section 5003 to the practice in equity is controlled by general order No. 10, adopted by section 4990.

In Bankruptcy.

*Henry C. Beach*, for bankrupt.

*Philo Chase*, for creditors.

BROWN, D. J. Upon a petition of the bankrupt for an order directing that certain persons be punished for contempt in disobeying a prior order of this court, an order of reference was made to the register to report the facts pertaining to the alleged contempt. A great mass of testimony is submitted, annexed to the register's report,

among which is that of Henry E. Hopkins, a witness called by the bankrupt, examined on his behalf, and also cross-examined. The deposition of Hopkins, as appears by additional affidavits submitted in respect thereto, was first taken by a stenographer, who furnished to the counsel for the bankrupt, "some considerable time afterwards," a long-hand copy of his notes of the testimony; and counsel thereupon endeavored to obtain the further attendance of the witness for the purpose of having this transcript of the notes read over and subscribed by the witness in the presence of the register, but the witness could not then be found, having, as it is alleged, left the state, and his whereabouts being unknown. The stenographer submits an affidavit that the long-hand copy is a correct transcript of the notes taken by him, and the register certifies that the witness was sworn, examined, and cross-examined before him. Counsel for the respondent now moves, before the hearing of the order to show cause upon the referee's report, for an order, in effect, suppressing the testimony of Hopkins, on the ground that it has never been read to or subscribed by him.

Section 5003 of the Revised Statutes prescribes that testimony is to be given "in the same manner as in suits in equity in the circuit court." Section 5006 authorizes the court to punish a witness for contempt "for refusing or declining to swear to or sign his examination." General order No. 10 provides that witnesses "shall be subject to examination and cross-examination, which shall be had in conformity with the mode now adopted in courts of law;" and that depositions upon such examination "shall be taken down in writing by or under the direction of the register, and, when completed, shall be read over to the witness, and signed by him in the presence of the register." By section 4990 the then existing general orders of the supreme court were readopted.

The mode of giving testimony in suits in equity in the circuit court, referred to in section 5003, is substantially the same as that directed by order No. 10, with a slight variation. The general rule in equity promulgated at the December term, 1861, provides that the depositions taken upon oral examination, "when completed, shall be read over to the witness and signed by him in the presence of the parties or counsel, or such of them as may attend; provided, if the witness shall refuse to sign the deposition, then the examiner shall sign the same." Under this rule the signature of the witness in equity suits in the United States courts is not an indispensable condition to his deposition being received.

In *Moulson* v. *Hargrave*, 1 S. & R. 201, unsigned depositions were received, and the court stated that it had been decided by that court, and also by the circuit court of the United States for that district, that the signatures of witnesses were not necessary. But, in such cases, the testimony is taken by the examiner, a sworn officer of the court, and its correctness is authenticated by him. See, also, *Mobley* v. *Hamit*, 1 A. K. Marsh. 590; *Rutherford* v. *Nelson*, 1 Hayw. 105; *Wiggins* v. *Pryor*, 3 Porter, 430.

The practice in the English chancery was settled by the early case of *Copeland* v. *Stanton*, 1 P. Wms. 414; where the depositions unsigned, because of the sudden death of the witness, were not admitted, for the reason, as the court say, that "the witness was at liberty to amend or alter anything, after which he signs them, and then, but not before, the examinations are complete and good evidence." See Smith, Ch. Pr. 519. If the direct examination is signed, and thus complete, so far as it goes, the loss of opportunity to cross-examine the witness, by his death or other inevitable accident, is not sufficient to exclude the deposition, and it may be received for what it is worth. *Nolan* v. *Shannon*, 1 Molloy, 157; *Arundel* v. *Arundel*, 1 Chan. 90; *Gass* v. *Stinson*, 3 Sumn. 98.

The rule requiring depositions to be read to the witness and subscribed by him, adopted by general order No. 10, which was also a statutory requirement in the chancery practice of this state, (2 Rev. St. *181, § 89,) was manifestly intended to secure accuracy and prevent mistakes and abuses in testimony taken out of court. It is not necessary to hold that in every case whatsoever, and without regard to circumstances, each of the directions of rule 10 must be inflexibly complied with. The rule does not declare that the testimony shall be rejected in case of a defect in any one of the prescribed particulars, and circumstances may arise where the literal enforcement of the rule would defeat its real purpose. But the rule must be enforced wherever the failure to procure the signature has arisen from any laches on the part of the parties calling the witness, and when the ordinary guaranties of the correctness of the testimony are wanting. In this case none of those guaranties are supplied. The testimony was not taken by the register or by any officer of the court, nor, so far as appears, by any person acting under him. It has not been seen or read by the witness, and its correctness is not certified by the register, and, from the circumstances of the case, necessarily cannot be so certified by him. In legal effect it is nothing more than what the stenographer by his affidavit swears he heard the

witness say; *i. e.*, it is mere hearsay. Mistakes of more or less importance constantly occur in the notes of stenographers, even of those who are most experienced and trustworthy; and parties who procure testimony to be taken in this way ought to be held bound to procure its correctness to be authenticated by the signature of the witness, or be precluded from using it, if objected to. This court, in *U. S.* v. *Pings*, 4 FED. REP. 714, suppressed depositions reduced to writing by the counsel of one party in the absence of the other, on account of the abuses to which such a practice, if sanctioned, would be likely to lead. The allowance of depositions like the present are still more objectionable, and could not be sustained, even if there were no general order applicable to the subject. That there was considerable delay by the stenographer in furnishing to counsel the transcript of his notes is no excuse; nor does the affidavit of the attorney show sufficient endeavors to find the witness, even if entire inability to procure him would have furnished a sufficient reason for admitting the testimony, which I do not think it would.

The deposition should, therefore, be suppressed.